**IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| EQUAL EMPLOYMENT OPPORTUNITY COMMISSION, | ) ) ) ) | |
| Applicant, | ) ) | |
| v. | ) ) | No. 10 C 7109 |
| AEROTEK, INC., | ) ) | Judge Sharon Johnson Coleman |
| Respondent. | ) ) ) | Magistrate Judge Morton Denlow |

## MEMORANDUM OPINION AND ORDER

The Equal Employment Opportunity Commission ("EEOC") has filed an Application for Order to Show Cause Why the Subpoena Should Not Be Enforced ("application") [dkt # 1] against Aerotek, Inc. ("Aerotek"). The EEOC issued the subpoena in the course of an investigation of charges of national origin discrimination. Aerotek objects to the document requests in the subpoena, claiming they are irrelevant to the charges, overbroad, and unduly burdensome. Aerotek separately moves to dismiss [dkt # 11] the application to enforce the subpoena pursuant to Federal Rule of Civil Procedure 12(b)(1), challenging this Court's subject-matter jurisdiction.

## **Background**

Aerotek is a national staffing agency with several offices in Illinois, currently the EEOC is investigating twelve charges of discrimination against Aerotek. Two of the charges are referenced in the subpoena at issue. On May 20, 2008, Marco A. Rivera and Oscar A. Gutierrez filed EEOC charges alleging national origin discrimination. Both Rivera and Gutierrez were internal employees working as recruiters of temporary workers for Aerotek. They allege that

Aerotek discriminated against them by denying them training and promotions, constructively discharging them and retaliating against them for engaging in protected activities.

EEOC Investigator Eric G. Lamb was assigned to investigate the Rivera and Gutierrez charges as well as ten other discrimination charges filed against Aerotek. The other charges relate to allegations of age and disability discrimination, retaliation, in addition to sexual and racial harassment. In the course of investigating these charges, the EEOC asserts that it found indications that Aerotek may be placing certain employees in lower paying jobs based on their national origin, and that Aerotek may be directing its employees to recruit temporary employees based on prohibited factors, including national origin, race, disability, and sex. On September 15, 2009, the EEOC issued a subpoena (No. CH-09-322) to Aerotek, requesting seventeen categories of documents from Aerotek's seven Illinois facilities.

On September 29, 2009, Aerotek challenged the subpoena with a petition to revoke or modify pursuant to 29 C.F.R. 1601.16(b). Aerotek challenged the subpoena on the basis that the requested information was irrelevant to the charges, overbroad, unduly burdensome, and/or privileged. The EEOC considered the petition and determined that the subpoena should be modified as to two of the seventeen categories of documents and the remaining fifteen should be enforced without modification. Due to the departure of the then Acting Vice Chair of the Commission, Christine M. Griffin, only two members of the Commission considered the petition. The determination by the Commission, issued on January 11, 2010, directed Aerotek to comply with the subpoena by February 10, 2010, for Categories 1-6, 10, 12, and 13-17, and by March 12, 2010, for Categories 7-9. The Commission modified Category 12 and decided that it would not pursue its request in Category 11 at that time. Thereafter, the EEOC agreed to

temporarily limit Categories 7-10 to the years 2007-2008, rather than the originally requested 2006 to the present. Aerotek allegedly continued to fail to comply with the EEOC's repeated requests for information and had submitted only partial responses by the extended deadlines of April 19, 2010, and May 2, 2010. After reviewing the material tendered by Aerotek, the EEOC determined that compliance with the subpoena would not be unduly burdensome. The EEOC gave Aerotek until June 11, 2010, to submit the missing information from Categories, 7, 9, 10, 12-14, and 16. The EEOC began the present enforcement proceeding on November 4, 2010.

## Discussion

### *1. Aerotek's Motion to Dismiss*

This Court will first address Aerotek's motion to dismiss since it concerns this Court's jurisdiction to enforce the subpoena. Aerotek moves to dismiss the EEOC's application to enforce the subpoena pursuant to Rule 12(b)(1), arguing that this Court does not have jurisdiction to enforce the subpoena because the Commission did not reach a final determination on Aerotek's petition to revoke or modify. Aerotek contends that only two members of the Commission considered the petition, and thus, no quorum existed to make the final determination.

The EEOC chose not to respond in writing to the motion. Instead, this Court heard oral argument on November 30, 2010. During the hearing, the EEOC responded that the Commission properly delegated its authority to the two commissioners that considered the petition; that the Commission ratified the decisions made during the three-month period that lacked a quorum; and that the EEOC is not subject to the same delegation limitations as the National Labor Relations Board ("NLRB"), as asserted by Aerotek. For the reasons that follow,

Aerotek's motion is denied and this Court has jurisdiction to enforce the subpoena.

When reviewing a motion to dismiss under Rule 12(b)(1) for lack of subject-matter jurisdiction, the Court should generally accept as true all well-pleaded factual allegations and draw all reasonable inferences in favor of the non-moving party. See, e.g., Long v. Shorebank Dev. Corp., 182 F.3d 548, 554 (7th Cir. 1999). "The district court may properly look beyond the jurisdictional allegations of the complaint and view whatever evidence has been submitted on the issue to determine whether in fact subject matter jurisdiction exists." Capitol Leasing Co. v. FDIC, 999 F.2d 188, 191 (7th Cir. 1993) (quoting Grafon Corp. v. Hausermann, 602 F.2d 781, 783 (7th Cir. 1979)).

The federal regulations governing EEOC procedures provide that the target of a subpoena may file a petition to revoke or modify the subpoena. 29 C.F.R. §1601.16(b). "[I]f a person who is served with a subpoena petitions for revocation or modification of the subpoena pursuant to paragraph (b), and the Commission issues a final determination upholding all or part of the subpoena, and the person does not comply with the subpoena, the General Counsel or his or her designee may institute proceedings to enforce the subpoena in accordance with paragraph (c) of this section." 29 C.F.R. §1601.16(d). Paragraph (c) incorporates by reference the procedures of section 11(2) of the National Labor Relations Act, as amended,, to compel enforcement of the subpoena through the district court by application. 29 C.F.R. §1601.16(c); 29 U.S.C. §161(2).

Here, Aerotek argues that there was no "final determination" by the Commission because the two member Commission did not satisfy the quorum requirement. Aerotek asserts that "the Commission" as referred to in 29 C.F.R. §1601.16(d), "means a properly constituted Commission meeting the statutory quorum requirements." Aerotek Mot. to Dismiss, p.5.

Aerotek urges this Court to follow the Supreme Court's majority opinion in New Process Steel v. NLRB, 130 S. Ct. 2635, 177 L. Ed. 2d 162 (2010)[1].  In New Process Steel, the Supreme Court remanded the case upon finding that the actions by the NLRB were invalid use of its delegation authority.  Anticipating certain vacancies from the Board, the NLRB delegated its power to three individual members in an effort to preserve its authority to act.  Pursuant to the NLRB's regulations, the Board may delegate its authority to a group of no less than three and two members constitute a quorum of that group. 29 U.S.C. §153(b).   The Supreme Court held that section 3(b) of the National Labor Relations Act ("NLRA") (29 U.S.C. §153(b)) requires that a delegee group maintain a membership of three in order to exercise the delegated authority of the Board. New Process Steel, 130 S. Ct. at 2642.

The majority in New Process Steel expressly treated "group" and "Board" separately, stating that "the quorum provisions merely define the number of members who must participate in a decision, and look to the vacancy clause to determine whether vacancies in excess of that number have any effect on an entity's authority to act." Id at 2643.  The Court continued, "the clause speaks to the effect of a vacancy in the *Board* on the authority to exercise powers of the *Board*; it does not provide a delegee group authority to act when there is a vacancy in the group... §3(b) explicitly distinguishes between a group and the Board throughout, and in light of that distinction we do not think 'Board' should be read to include 'group' when doing so would negate for all practical purposes the command that a delegation must be made to a group of at least three members."(emphasis in original) Id.

---

[1] New Process Steel was a 5-4 decision with Justice Stevens delivering the majority opinion in which Chief Justice Roberts, and Justices Scalia, Thomas, and Alito joined.  Justice Kennedy filed a dissent in which Justices Ginsburg, Breyer, and Sotomayor joined.

However, that case refers only to the quorum and delegation requirement for the NLRB. The EEOC's quorum regulations are different from the NLRB delegation and quorum regulations. The EEOC, like the NLRB, is statutorily comprised of five members and three members constitutes a quorum. 42 U.S.C. § 2000e-4(a), (c). Section 3(b) of the National Labor Relations Act provides for the creation of the National Labor Relations Board and expressly limits the NLRB's delegation powers. 29 U.S.C. §153(b). The NLRB "is authorized to delegate to any group of *three or more members* any or all of the powers which it may itself exercise."(emphasis added) Id. In contrast, Title VII contains no delegation provision for the EEOC. Title VII's only directive regarding vacancies and a quorum for the EEOC states: "A vacancy in the Commission shall not impair the right of the remaining members to exercise all the powers of the Commission and three members thereof shall constitute a quorum." 42 U.S.C. §2000e-4(c). As noted above, even the majority in New Process Steel recognized the difference between the a delegation clause and a vacancy clause. See New Process Steel, 130 S. Ct. at 2643.

This Court's research revealed only one case to have addressed the particular issue presently before this Court. In EEOC v. Joseph Horne Co., the Fourth Circuit affirmed a district court's finding that since "the two votes approving denial of the petition would likely have prevailed in any event, any absence of the third member was immaterial and only a *de minimis* deviation from EEOC's then regulation." EEOC v. Joseph Horne Co., 607 F.2d 1075, 1076 (4th Cir. 1979), *rev'd on other grounds sub nom*. EEOC v. Associated Dry Goods Corp., 449 U.S. 590 (1981).

Here, this Court finds the reasoning of New Process Steel inapplicable to the instant EEOC action since Title VII does not include a delegation provision like that in the NLRA. In

this case, there is no indication from the record, that even if a third member had participated in the petition to revoke the result would have been different because the two members that did participate would have constituted a majority. Moreover, on April 29, 2010, the Commission ratified the decisions made during the period when the Commission only had two members. The EEOC initiated enforcement here in the district court on November 4, 2010, well after ratification of the final determination on Aerotek's petition to revoke or modify. If this Court were to invalidate the decision on Aerotek's petition to revoke or modify because the decision was initially made by only two members of the Commission, the ultimate result would likely be the same. The EEOC would likely make the same decision denying the petition with the two modifications, and initiate the same enforcement proceedings now before this Court if Aerotek failed to comply. Accordingly, Aerotek's Motion to Dismiss is denied and this Court finds it has jurisdiction to enforce the subpoena.

## 2. EEOC's Application for Rule to Show Cause Why the Subpoena Should Not Be Enforced

The EEOC filed an application for rule to show cause why the subpoena issued against Aerotek should not be enforced. At issue in this enforcement action are seven of the production requests in the subpoena, including categories 7-10 and 12-14. Aerotek objects to the production of material on those requests because it claims the information is irrelevant to the underlying charges, the subpoena is overbroad, and the production would be unduly burdensome.

The EEOC's authority to investigate is very broad, though not plenary. EEOC v. Tempel Steel Co., 814 F.2d 482, 485 (7th Cir. 1987) (citing Motorola Inc. v. McLain, 484 F.2d 1339, 1345-46 (7th Cir 1973)). Section 706(b) of Title VIII of the Civil Rights Act of 1964 authorizes the Commission to investigate all charges of employment discrimination. 42 U.S.C. §2000e-5(b).

Section 709(a) gives the Commission the right to access relevant records, and section 710 allows the Commission to have its subpoenas enforced in court. 42 U.S.C. §2000e-8(a), §2000e-9. In a subpoena enforcement proceeding, the role of the court is "sharply limited." Tempel Steel Co., 814 F.2d at 485. Such proceedings are designed to be summary in nature. EEOC v. Bay Shipbuilding Corp., 668 F. 2d 304, 308-309 (7th Cir. 1981). The district court must enforce an administrative subpoena as long as the investigation is within the agency's authority, the subpoena is not too indefinite, and the information sought is reasonably relevant. EEOC v. A.E. Staley Mfg. Co., 711 F.2d 780, 783 (1983); United States v. Morton Salt Co., 338 U.S. 632, 652, 94 L. Ed. 401, 70 S. Ct. 357 (1950).

The EEOC is pursuing the following categories of information:

Category 7: "an electronic database, such as an Excel document, providing demographic and contact information for individuals who applied to Aerotek for employment as <u>internal employees</u> who were <u>not hired</u> from January 1, 2006 to the present." EEOC Memorandum, p.5.

Category 8: "an electronic database providing demographic and contact information for individuals who applied to Aerotek for employment as <u>temporary employees</u> who were <u>not hired</u> from January 1, 2006 to the present." Id.

Category 9: "an electronic database providing demographic and contact information for individuals who applied to Aerotek for employment as <u>temporary employees</u> who <u>were hired</u> from January 1, 2006 to the present." Id.

Category 10: "documents relating to the application and selection process for each individual referenced in the databases responsive to Categories 7-9, such as resumes and applications." Id.

Category 12: EEOC modified its request to copies of two sample contracts between Aerotek and a client account. Id.

Category 13: documents relating to requests for temporary employees from Aerotek's accounts. Id.

Category 14: all documents relating to job assignments for each account. Id at 6.

### *a. Relevance and Breadth*

Aerotek's first objection to the subpoena is based on relevance. Aerotek contends that the information sought in the subpoena is irrelevant to the underlying charges for several reasons. More specifically, Aerotek asserts that the only relevant locations are the offices in Schaumburg, Crystal Lake, and Rockford, where Rivera and Gutierrez worked while employed at Aerotek, and that the request for information from Rosemont, Oak Brook, Gurnee, and Chicago, is irrelevant. Aerotek also argues that the time period for which the EEOC requests documents is irrelevant. The subpoena requests information from January 1, 2006 to the present (the subpoena was issued on September 15, 2009). Aerotek argues that any time period beyond the duration of Rivera (September 2005 to May 2008) and Gutierrez's (April 2007 to March 31, 2008) employment is irrelevant. The charges allege national origin discrimination, thus, Aerotek argues that the request for information related to race, sex, age, and disability discrimination is irrelevant. Lastly, Aerotek contends that the alleged discriminatory practices should be limited to those specifically stated in the charges (promotion, training, constructive discharge and retaliation of internal employees in the position of recruiter) and that the request for information related to hiring and placement practices for internal employees and external temporary employees in all positions is irrelevant.

"Since the enactment of Title VII, courts have generously construed the term 'relevant' and have afforded the Commission access to virtually any material that might case light on the allegations against the employer." EEOC v. Shell Oil Co., 466 U.S. 54, 68-69 (1984). EEOC subpoenas that seek information about discrimination not expressly alleged in the charge have been consistently upheld. Bay Shipbuilding Corp., 668 F.2d at 311 n.8. It is sufficient in terms of relevancy that the material subpoenaed "touches a matter under investigation." A.E. Staley Mfg. Co., 711 F.2d at 783.

Here, the specific charges allege discriminatory practices in promotion, training, constructive discharge and retaliation at the three different locations of Aerotek where Rivera and Gutierrez worked. Perhaps if the charges related to only one facility, material from the other facilities would be irrelevant. However, here the allegations include three facilities. Therefore, the information requested from the other facilities in Illinois is relevant in that it might cast light on whether the alleged discrimination was isolated or part of a widespread pattern. "The EEOC is entitled to information that 'may provide a useful context' for evaluating employment practices under investigation, in particular when such information constitutes comparison data." EEOC v. Kronos, Inc., 620 F. 3d 287, 298 (3d Cir. 2010) (quoting EEOC v. Univ. of Pittsburgh, 643 F.2d 983, 985-86 (3d Cir. 1981)(holding that an EEOC request for faculty employment records from four related schools was relevant to a charge of sex discrimination in the School of Nursing)).

The temporal scope of the subpoena is clearly relevant. It covers the time period during which Rivera and Gutierrez were employed and a period of time beyond. True, the subpoena requests information "to the present," which now encompasses a fairly lengthy time after the

employment of Rivera and Gutierrez. Yet, the subpoena was issued in September 2009, only a little more than a year after the period of employment. Nevertheless, "[c]omparative information . . . is absolutely essential to a determination of discrimination." EEOC v. Roadway Express, Inc., 261 F.3d 634, 642 (6th Cir. 2001) (quoting EEOC v. Ford Motor Credit Co., 26 F.3d 44, 47 (6th Cir. 1994)). Thus, the post-charge information provides essential context to the employment practices of Aerotek during the period of employment in the charge.

The information requested related to sex, race, and disability are also relevant and courts have consistently enforced subpoenas seeking information on different types of discrimination where only one type has been included in the charge. See, e.g., Tempel Steel Co., 814 F. 2d at 486 n.9; Bay Shipbuilding, 668 F.2d at 311 n.8; EEOC v. Univ. of New Mexico, 504 F. 2d 1296, 1299-1302 (10th Cir. 1974); Blue Bell Boots, Inc. v. EEOC, 418 F.2d 355, 358 (6 th Cir. 1969), cited by the Supreme Court with approval in Shell Oil Co, 466 U.S. at 68 n.20 (1984).

Likewise, information related to other job positions within Aerotek, and as part of Aerotek's business as a recruiter and provider of temporary employees, is relevant to the allegations of discrimination in employment practices. The charges allege discrimination in promotion and training as well as constructive discharge and retaliation. Considering the basis of Aerotek as a business is recruitment of employees (internal and external), material related to its employment practices is especially relevant to the investigation. Courts have consistently upheld subpoenas requesting information related to different job classifications. See, e.g., EEOC v. United Airlines, Inc., 287 F.3d 643, 649 (7th Cir. 2002); Bay Shipbuilding, 668 F.2d at 311.

Aerotek argues that the subpoena is overbroad for the same reasons it requests irrelevant information. Aerotek requests that, if the subpoena is enforced, it should be limited to the

facilities where Rivera and Gutierrez were employed, the duration of their employment (or a very short time after), internal recruiter positions, and national origin. For the reasons discussed with respect to the relevance of the material requested, this Court finds that the subpoena is also sufficiently definite and not overbroad.

### *b. Unduly Burdensome*

Aerotek also argues that compliance with the subpoena would be unduly burdensome. Aerotek's argument is entirely conclusory and provides no support for its contention that compliance would be an "enormous, time-consuming, labor-intensive and costly effort." Rather than support its conclusion with evidence, Aerotek simply states "the burden is obvious on its face." That statement, however, ignores the fact that Aerotek has the burden of showing that "compliance would threaten the normal operations of its business." EEOC v. Quad/Graphics, Inc., 63 F. 3d 642, 648 (7th 1995) (citing Bay Shipbuilding Corp., 668 F.2d at 313 (rejecting argument that a subpoena is unduly burdensome absent presentation of any supportive material such as affidavits)). Aerotek fails to demonstrate that compliance would threaten normal business operations, thus, the compliance with the subpoena is not unduly burdensome.

### Conclusion

For the reasons stated above, the EEOC's application to enforce the subpoena by motion for rule to show cause why the subpoena should not be enforced [1] is granted. Aerotek's motion to dismiss [11] is denied.

IT IS SO ORDERED.

Date: January 12, 2011.        Entered: _____
                                     Judge Sharon Johnson Coleman